IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN M. HARDIMON and<br>SARAH Z. McBRIDE,<br><br>                Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br>INTERNAL REVENUE SERVICE,<br>UNITED STATES HUMAN AND<br>  HEALTH SERVICES - OIG,<br>UNITED STATES DEPT. OF LABOR,<br>LISA MADIGAN, Attorney General,<br>NATIONAL INS. CRIME BUREAU,<br>U.S. ATTORNEYS OFFICE HEALTH<br>  CARE FRAUD TASK FORCE<br>  SOUTHERN DISTRICT of ILLINOIS,<br>U.S. ATTORNEYS OFFICE, and<br>BLUE CROSS and BLUE SHIELD<br>  INVESTIGATORS (IL and MO),<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 11-cv-0383-MJR-SCW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

REAGAN, District Judge:

On May 10, 2011, John M. Hardimon filed four pro se civil lawsuits in this District Court using a form designated "Pro Se Civil Rights Complaint (Non-Prisoner)" and listing two Plaintiffs: (1) himself and (2) his wife, Sarah McBride. One of the four cases is the above-captioned action. Along with the complaint in each case, Hardimon filed a motion seeking leave to proceed in forma pauperis (without prepaying fees or costs) and a motion for appointment of counsel.

Randomly assigned to the Honorable J. Phil Gilbert and transferred to the undersigned District Judge, this case comes now before the Court for threshold review of subject matter jurisdiction and resolution of Plaintiffs' request for leave to proceed in forma pauperis ("IFP").

"Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit." *Winters v. Fru-Con, Inc.*, **498 F.3d 734, 740 (7th Cir. 2007),** *quoting McCready v. White*, **417 F.3d 700, 702 (7th Cir. 2005), and** *citing Steel Co. v. Citizens for a Better Environment*, **523 U.S. 83 (1998).** So, when a new lawsuit is filed in this Court, the complaint must be examined to make sure that federal subject matter jurisdiction lies over the lawsuit.

Plaintiffs invoke subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331, via alleged violations of rights secured by the United States Constitution. Although the complaint states that this suit is based on 42 U.S.C. § 1983 (which applies to state and local officers), Plaintiffs' claims (directed against a host of *federal* officials) appear to be better construed as *Bivens* claims. *Bivens v. Six Unknown Federal Narcotics Agents*, **403 U.S. 388 (1971),** established that the victims of constitutional violations by *federal* agents can sue to recover damages against the officials in federal court. In other words, although "more limited in some respects, … a *Bivens* action is the federal analog to suits brought against state officials" under § 1983. *Hartman v. Moore*, **547 U.S. 250, 255 n.2 (2006).**

So, unlike several of Plaintiffs' other recently-filed lawsuits, the above-captioned case at least *invokes* a basis for federal subject matter jurisdiction, arguably

surviving threshold jurisdictional review. The Court's inquiry does not end there, however. If a plaintiff wishes to proceed in forma pauperis, the district court must both (1) ensure that the plaintiff is indigent and (2) screen the complaint, dismissing with prejudice any claims that are frivolous, malicious, or fail to state a claim upon which relief can be granted. **28 U.S.C. § 1915(e)(2);** *Gladney v. Pendleton Corr. Facility*, **302 F.3d 773, 775 (7th Cir. 2002),** *cert. denied*, **538 U.S. 910 (2003).**[1]

More specifically, as to indigence, 28 U.S.C. § 1915(a)(1) authorizes a federal district court to allow a civil case to proceed without prepayment of fees, if the movant submits an affidavit that includes a statement of all assets he possesses which demonstrates that he is unable to pay the fees or give security therefor. As to screening of the complaint, 28 U.S.C. § 1915(e)(2) requires this Court to carefully scrutinize the record and "dismiss the case," if the allegation of poverty is untrue, the action is frivolous or malicious,[2] the action fails to state a claim upon which relief can be granted, or the action seeks monetary relief against a defendant who is immune from such relief.

---

[1] When a plaintiff is a prisoner seeking redress from employees of a government entity (for instance, the Bureau of Prisons), the district court must promptly screen the complaint, *whether or not* the inmate proceeds in forma pauperis. *See* **28 U.S.C. 1915A(a);** *Rowe v. Shake*, **196 F.3d 778, 781 (7th Cir. 1999).** In the instant case, the complaint was filed when Plaintiff Hardimon was sentenced but still on bond, awaiting designation to a prison facility and not yet a "prisoner." *See* **28 U.S.C. § 1915A(c)** ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law….").

[2] As to frivolity -- if a suit filed IFP is irrational or delusional, § 1915(e) *requires* the district court to dismiss it. And if the allegations of the complaint are so fanciful that they fail to engage the court's subject matter jurisdiction, the dismissal should be without prejudice. *See Gladney*, **302 F.3d at 774;** *African-American Slave Descendants Litigation*, **471 F.3d 754, 758 (7th Cir. 2006).**

*Id.* With these standards in mind, the undersigned Judge reviews the May 10, 2011 complaint herein and immediately encounters three significant obstacles.

First, to the extent that the complaint challenges Hardimon's conviction in the criminal case (Case No. 10-CR-30170-MJR), it runs afoul of the *Heck* doctrine. In *Heck v. Humphrey*, **512 U.S. 477, 486-87 (1994),** the United States Supreme Court held that a civil plaintiff could not bring a § 1983 claim against prosecutors and investigators who allegedly engaged in an unreasonable and arbitrary investigation leading to his arrest. The Court concluded that the prisoner's claims in the § 1983 suit directly attacked the validity of his underlying conviction, and those claims could not be brought via civil complaint until the criminal conviction was overturned.

The *Heck* Court declared that to recover damages for an unconstitutional conviction (or for other harms caused by actions whose unlawfulness would render a conviction or sentence invalid), a § 1983 plaintiff *first* must prove that his conviction was reversed on direct appeal, expunged, or called into question by a federal court's issuance of a writ of habeas corpus. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Heck*, **512 U.S. at 486-87.** *See also Jogi v. Voges*, **480 F.3d 822, 836 (7th Cir. 2007)(***citing Wilkinson v. Dotson*, **544 U.S. 74, 81-82 (2005), for the proposition that *Heck* prevents using § 1983 or *Bivens* to circumvent the need to challenge the validity or duration of a conviction using the vehicle of habeas corpus).**

As succinctly summarized by the Seventh Circuit five months ago: "The Supreme Court held in *Heck* that arguments attacking the validity of a conviction

4

cannot be advanced under § 1983 unless the conviction or sentence previously has been invalidated." *Polzin v. Gage*, **636 F.3d 834, 836 (7th Cir. 2011).**

So a plaintiff may not sue for damages based on violations of his civil rights arising from a criminal prosecution *if* a judgment in plaintiff's favor would necessarily imply the invalidity of the conviction or sentence. *VanGilder v. Baker*, **435 F.3d 689 (7th Cir. 2006).** And the rule announced in *Heck* applies not just to § 1983 claims but to *Bivens* claims as well. *See, e.g., Case v. Milewski*, **327 F.3d 564, 569 (7th Cir. 2003);** *Clemente v. Allen*, **120 F.3d 703, 705 (7th Cir. 1997).**

Thus, any suit that would undermine the conviction or sentence must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has been invalidated. *Heck,* **512 U.S. at 487.** In the case sub judice, the complaint attempts to do precisely this – undermine the validity of Hardimon's conviction based on alleged abuses of power by the investigators, F.B.I. agents, and prosecutors who served the search warrants, investigated the health care fraud perpetrated by Hardimon, and prosecuted the case against him in this Court.

By way of example, the complaint alleges that in executing a search warrant, I.R.S. agents, despite being "well aware that the Hardimon family had representation," visited the family first and "[let] the attorneys know about it later" (Doc. 1, p. 7). This and an additional allegation that the I.R.S. agents questioned Plaintiffs without first permitting them call their lawyers suggest that Hardimon is attacking his criminal conviction by interposing arguments he might have made (but did not raise) via suppression motion in the underlying criminal case. He cannot attack

5

his criminal conviction via this civil suit for damages, whether this case is characterized as a § 1983 lawsuit or a *Bivens* action.

Second, even if the *Heck* doctrine poses no bar to the claims herein (or if some claims, e.g., those of Sarah McBride,[3] are not subject to *Heck*), many of the claims run aground, because Plaintiffs seek monetary damages ($15,000,000.00, *see* Doc. 1, p. 8) from defendants who are immune from such relief. For starters, Hardimon has named as Defendants the Assistant United States Attorneys who prosecuted him in the underlying criminal case, as well as the IRS agents (and agents of other federal agencies) who investigated and/or testified against him in the criminal case. However, absolute immunity shields from § 1983 liability any person acting as a witness or as a prosecutor, when performing their duties in the judicial process. **Polzin, 636 F.3d at 838;** *citing Briscoe v. LaHue***, 460 U.S. 325, 329-36 (1983), and** *Imbler v. Pachtman***, 424 U.S. 420-29 (1976).**

The same analysis applies to Bivens claims. ***See, e.g., Cross v. Fiscus*, 830 F.2d 755, 756 (7th Cir. 1987)("When a *Bivens* action is available, a series of qualified**

---

[3] Indeed, it is a stretch to conclude that the complaint (which rants in the first person, from the perspective of Dr. Hardimon) presents any claim for violation of Sarah McBride's civil rights. It alleges only that her cell phone was taken from her prior to interrogation (presumably by FBI Agents investigating the insurance fraud) and that agents took the couple's minor child, Matthew Brueggemann" from Dr. Hardimon's home at 7:30 am on December 17, 2009 without the consent of Sarah McBride or Matthew's stepfather, Darrell Brueggemann. The complaint is generally devoid of any independent claim by Sarah McBride. And comparison of the signatures on it strongly suggests that Dr. Hardimon signed the complaint *for* Sarah McBride (*see* Doc. 1, p. 8). Sarah McBride did not file an IFP motion (and her signature does not appear on the IFP motion filed by Hardimon).

**and absolute immunities may be set up in defense.");** *Anderson v. Creighton,* **483 U.S. 635, 637-38 (1987).** Because many of Hardimon's claims challenge conduct that is "intimately associated with the judicial phase of the criminal process," *Imbler,* **424 U.S. at 430**, those claims would warrant dismissal on immunity grounds.[4]

Finally, even if no claims were foreclosed by *Heck* or subject to dismissal based on immunity, the complaint fails to state a claim upon which relief can be granted. The same standard applies when screening a complaint under § 1915(e)(2) as when evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6). *See Santiago v.* **Walls, 599 F.3d 749, 756 (7th Cir. 2010).** The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* **-- U.S. --, 129 S. Ct. 1937, 1949,** *quoting Bell Atlantic Corp. v. Twombly,* **550 U.S. 544, 570 (2007).** Here, construing the complaint in the light most favorable to Plaintiffs, accepting as true all well-pleaded facts, and drawing in Plaintiffs' favor all possible inferences, *see Cole v. Milwaukee Area Technical College,* **634 F.3d 901, 903 (7th Cir. 2011),** the undersigned Judge concludes that the complaint fails to state a claim upon which relief can be granted.

---

[4] Other acts alleged by Hardimon against the prosecutors arguably are shielded by qualified immunity as opposed to absolute immunity. As the Supreme Court explained in *Buckley v. Fitzsimmons,* **509 U.S. 259, 272-73 (1993)**: "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made. On the other hand, as the function test of *Imbler* recognizes, … when a prosecutor 'functions as an administrator rather than as an officer of the court' he is entitled only to qualified immunity."

The complaint alleges in scattershot fashion (via a one-page rambling narrative) that the "United States Government" and "various special agents" did the following things (Doc. 1, p. 7):

They blocked traffic in Dr. Hardimon's neighborhood, showed up between 7:00 and 8:00 am, and "rushed in" as soon as the door was opened "without asking!" Various agencies "joined in so they could … get themselves some type of credit." When special agents executed a search warrant, they were disruptive, they moved objects around, they took photos that "would be advantageous to their argument," and they irritated Dr. Hardimon's wife. The agents chose to execute a search warrant on Dr. Hardimon's BMW while he was at a local junior college "so he could be embarrassed and humiliated in front of his colleagues and current students." While investigating the health care fraud and interviewing Dr. Hardimon's former patients, "the various agents" used abusive language and made disparaging remarks about Dr. Hardimon, such as "this guy does not need to be around money!" The agents interviewed persons of low socioeconomic status and persons who lived in impoverished areas. The agents removed a minor child (Matthew Brueggemann) from Dr. Hardimon's home before executing the search warrant on December 17, 2009, without the consent of his mother, Sarah McBride, or stepfather, Darrell Brueggemann (and then drove him to school). An I.R.S. agent (Kim Singer) said that Plaintiffs could not use their cell phones to contact their attorney, and separated Plaintiffs during interrogation. Special agents told Darrell Brueggemann to pick up his daughter from school on the day of the December 17th search warrant execution, due to concerns that

8

Dr. Hardimon could be angry or aggressive. Darrell Brueggemann (who is not a named Plaintiff, whose connection is not identified in the complaint, but who appears to be a spouse or former spouse of Sarah McBride) was "infuriated" that his son Matthew was at Dr. Hardimon's house "when the special agents came and served the initial search warrant and took Matthew to school," because Brueggemann believed the agents would wait to serve the warrant after Matthew "had gone to the bus stop!"

The Statement of Claim concludes with these two sentences (Doc. 1, p. 7): "What the patients do not know is that the insurance companies were being used as the victim and not each patient themselves. So in the long run, the insurance companies and the government agents were going around to the patients and getting them to produce favorable information that would only benefit the insurance companies and not the individuals of this society!"

Liberally construing the complaint due to Plaintiffs' pro se status, and accepting all factual allegations as true, this Court finds that the complaint fails to state a claim to relief that is plausible on its face. The complaint contains no substantive allegations against several of the named Defendants, such as Lisa Madigan (Attorney General of the State of Illinois), "United States Human and Health Services, OIG," "United States Department of Labor," the "National Insurance Crime Bureau," and "Blue Cross and Blue Shield Investigators." The Court cannot discern any claims on behalf of Sarah Z. McBride (who did not file her own separate IFP motion and may not have signed the complaint, Doc. 1, p. 8).

As noted above, liberal interpretation of the allegations contained in the disjointed "Statement of Claim" yields the distinct impression that John Hardimon attacks his conviction in the criminal case by complaining (in this civil case) of conduct by investigators, prosecutors, and others working for and with the U.S. Attorney's Office and Internal Revenue Service all of which was intimately involved with the criminal judicial process and either subject to immunity principles or barred by the *Heck* doctrine.

And the allegations simply do not state a plausible claim that federal officials (or federal officials conspiring with private individuals) deprived Plaintiffs of a federally-secured constitutional right. An FBI agent photographing pet stains on a homeowner's carpet and moving boxes around while executing a search warrant violates no right under the United States Constitution (and contravenes no other law, rule or statute of which the Court is aware). An agent or officer opting to serve a warrant on a person at his place of business or at a local college where that person teaches (instead of waiting to get him alone, out of view of colleagues or onlookers) violates no federally-protected right. Assuming as true and cobbling together all the disparaging statements Hardimon claims agents made regarding his integrity and temper, the Court finds no plausible claim for violation of civil rights or other cause of action. And Hardimon's views as to who the "real victims" of his insurance scheme are add nothing, are irrelevant, and do not state a plausible claim for relief in this federal court.

Accordingly, the Court **DENIES** Plaintiffs' motion for IFP (Doc. 2) and **DISMISSES** this action without prejudice, pursuant to 28 U.S.C. 1915(e)(2)(B). Dismissal **RENDERS MOOT** the motion for appointment of counsel (Doc. 3). The Clerk's Office shall enter judgment accordingly.

IT IS SO ORDERED.

DATED July 12, 2011.

s/ Michael J. Reagan  
Michael J. Reagan  
United States District Court